UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DENNIS J. ROGERS, II, ET AL.,    )
                                )
        Plaintiffs,       )
                                )       CIVIL ACTION NO.
VS.                       )
                                )       3:16-CV-1315-G
MARK TAMMARIELLO,       )
                                )
        Defendant.      )

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Mark Tammariello ("Tammariello")'s

motion, pursuant to FED. R. CIV. P. 12(b)(2), to dismiss the plaintiffs' complaint for

lack of personal jurisdiction (docket entry 7).  For the reasons stated below,

Tammariello's motion is granted.

## I.  BACKGROUND

This case arises out of an investment agreement between Tammariello, Lewis

Ashbey ("Ashbey"), and the plaintiffs, Dennis J. Rogers II ("Rogers") and Roger's

financial services company, Push Start Industries, LLC ("Push Start").  Plaintiffs'

Original Complaint ("Complaint") ¶¶ 1.01, 3.02 (docket entry 1).  Tammariello is a

Louisiana resident.  *Id.* ¶ 1.03.  Rogers and Push Start are Texas residents.  *Id.* ¶¶ 1.01-1.02.

In July 2015, Rogers and Ashbey discussed several investment opportunities, including a water rights deal in Oklahoma ("Water Rights Deal") and a silica mining deal in Mississippi ("Trilogy Deal").  *Id.* ¶ 3.06.  Ashbey and Rogers agreed to find investors for the Trilogy Deal.  ¶ 3.07.  Pursuant to their agreement, Ashbey was to provide Rogers with investments and, in turn, Rogers and Push Start would direct these investments to the Trilogy Deal.  See *id.* ¶¶ 3.08-3.09.

Around the same time, Ashbey approached Tammariello about the Water Rights Deal.  *See* Appendix in Support of Defendant's Brief/Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Tammariello Affidavit") ¶ 3 (docket entry 9).  Ashbey and Tammariello reached an agreement whereby Tammariello would provide Ashbey with $100,000 to invest in the Water Rights Deal in exchange for a fifteen percent return.  *Id.*

After his agreement with Tammariello, Ashbey notified Rogers that he had an investor who would invest $100,000 in the Trilogy deal.  Complaint ¶¶ 3.09-3.10. On August 20, 2015, following Ashbey's instructions, Tammariello wired his $100,000 investment to Push Start's bank account.  See *id.* ¶ 3.12; Tammariello Affidavit ¶¶ 4, 6.  Pursuant to his agreement with Ashbey, Rogers invested

Tammariello's $100,000 in the Trilogy Deal.  Plaintiffs Push Start and Rogers' Appendix in Support, Exhibit A ("Rogers Affidavit") ¶¶ 3-4 (docket entry 13).

In April 2016, Tammariello accused Rogers of misappropriating his $100,000 investment and demanded its return.  *See* Complaint ¶ 3.15.  On May 12, 2016, Rogers and Push Start commenced the instant declaratory judgment action to determine the rights, obligations, and liability of Rogers and Push Start with respect to Tammariello.  Complaint ¶ 4.02.  On July 18, 2016, Tammariello timely filed the instant motion.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (docket entry 7).  The motion is now ripe for decision.

II.  ANALYSIS

A.  The Factual Standard: A Prima Facie Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in

- 3 -

favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making

its determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Allred v. Moore* &

*Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);

*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

## B.  The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident

defendant if (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore*

*v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id.*  Because the Texas long-arm statute confers jurisdiction to the limits

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,

197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.*

*Helicopteros Nacionales de Colombia*, S.A., 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

## C. Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir. 1990), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corporation*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corporation*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a

relationship with the nonresident defendant does not satisfy this requirement. *Burger King Corporation*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King Corporation*, 471 U.S. at 474 (quoting *International Shoe Company v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King Corporation*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]ether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is

determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### D. Discussion

#### 1. *Ashbey Not Shown To Be Tammariello's Agent*

A principal can be subject to a forum's jurisdiction based on the actions of its agent.  See *Akerblom v. Ezra Holdings Ltd.*, 848 F. Supp. 2d 673, 690 (S.D. Tex. 2012) ("'Under Texas law, [a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control.'") (citations omitted), *aff'd*, 509 F. App'x 340 (5th Cir. 2013); *Stripling*, 234 F.3d 870-72.  As a general proposition, Texas law does not presume agency, and, when claiming agency, the alleging party has the burden of proving its existence.  *Buchoz v. Klein*, 184 S.W.2d 271, 286 (Tex. 1944).  A principal is liable for the acts of its agent when "the agent has actual or apparent authority to do those acts or when the principal ratifies those acts."  *Spring Garden 79U, Inc. v. Stewart Title Company*, 874 S.W.2d 945, 948 (Tex. App.--Houston [1st Dist.] 1994, no writ) (citations omitted).  Actual authority arises when the principal intentionally confers authority upon an agent, or intentionally allows the agent to believe it has authority,

- 8 -

or by want of due care allows the agent to believe himself to possess authority. *Id.* Apparent authority arises when a principal's conduct would lead a reasonably prudent person to believe that the agent possessed the authority to act on behalf of the principal. See *Maccabees Mutual Life Insurance Company v. McNeil*, 836 S.W.2d 229, 232-33 (Tex. App.--Dallas 1992, no writ).

In conclusory fashion, Rogers contends that Ashbey was Tammariello's agent. Plaintiffs' Brief in Support of Their Response to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Response") at 3-7 (docket entry 12). Based on this conclusion, Rogers further contends that Ashbey's contacts with Rogers were within the scope of Ashbey's actual or apparent authority. *Id.* at 9. Rogers also contends that, "[u]nder any theory, Tammariello's conduct ratified Ashbey's apparent agency authority," and that "[a]ny reasonable person would believe that Ashbey had the authority to act for Tammariello." *Id.* at 6.

However, Rogers's conclusions are premature. Before the court can determine the scope of a principal-agency relationship, Rogers must first satisfy his burden of establishing a principal-agency relationship between Ashbey and Tammariello. As Rogers notes, Response at 3, there are two requirements to find an agency relationship: (1) the alleged principal must assign the agent a task, and (2) the alleged principal must control the means and details by which the agent will accomplish that task. See *Indian Harbor Insurance Co. v. Valley Forge Insurance Group*,

535 F.3d 359, 364 (5th Cir. 2008) (quoting *Happy Industry Corporation v. American Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex. App.--Corpus Christi 1998, pet. dism'd w.o.j.)); see also *Jamison v. National Loan Investors, L.P.*, 4 S.W.3d 465, 468 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) (holding that an agent is a person or entity who is authorized to act for another and is subject to the control of the other). Here, Rogers satisfies the first requirement.  Tammariello undoubtedly assigned Ashbey the task of investing $100,000 in the Water Rights Deal in some capacity. *See* Tammariello Affidavit ¶¶ 1-4.

As for the second requirement, under Texas law "[i]t is the principal's extent of control over the details of accomplishing the assigned task that primarily distinguishes the status of independent contractor from that of agent." *Indian Harbor Insurance Co.*, 535 F.3d at 364.  A lending company satisfied this requirement in *First National Acceptance Company v. Bishop* when it provided "strict written instructions" for its broker to follow in closing a sale.  187 S.W.3d 710, 715 (Tex. App.--Corpus Christi 2006, no pet.) (holding the lending company's "strict written instructions" gave it the right to control "the means and details" of the broker's assigned task).

Here, there is no indication that Tammariello retained the right to control Ashbey's handling of the $100,000 investment.  From the start, Tammariello was unaware as to how Ashbey would invest Tammariello's funds in the Water Rights Deal.  *See* Tammariello Affidavit ¶¶ 3, 6.  In fact, Tammariello only knew that Ashbey

was seeking investors on behalf of an "unknown individual or entity" related to the Water Rights Deal. *Id.* Tammariello's lack of knowledge and hands off approach to effectuating his investment implies that Ashbey had broad discretion to do "everything else" under their agreement. See *Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312-13 (Tex. 2002) (holding that a trucking company did not have the "right to control" a driver where its only instructed the driver were where to pick up and drop off loads). Tammariello's actions are a far cry from providing the "strict written instructions" described in *First National Acceptance Company*.

Moreover, Tammariello's failure to control Ashbey during the performance of their agreement further negates any notion that Tammariello possessed the right to control Ashbey. Following Ashbey's directions, Tammariello wired money to Rogers "*without any instruction*" -- leaving Ashbey in complete control. *See* Response at 6 (emphasis added). Rogers even admits that "Ashbey control[ed] the means and process of accomplishing [the investment.]" *Id.* at 5. Ashbey further exercised his control by "direct[ing] Rogers to invest [Tammariello's funds] . . . in the Trilogy Mining Deal." *Id.* Tammariello did not even know of Roger's existence until well after the transaction was completed. *See* Tammariello Affidavit ¶ 4. Tammariello's minimal role in the transaction hardly evidences a right to control Ashbey. Thus, Ashbey was not Tammariello's agent, but was, at most, an independent contractor.

See *Randall Noe Chrysler Dodge, LLP v. Oakley Tire Company*, 308 S.W.3d 542, 546

(Tex. App.--Dallas 2010, pet. denied) (holding that a painter was an independent

contractor when the painter "retained the right to perform the painting job by

whatever method he chose").

### 2.   *Tammariello Has Insufficient Minimum Contacts with Texas*

Because Ashbey is not Tammariello's agent, Ashbey's contacts with Texas are

not imputed to Tammariello.  See *O'Quinn v. World Industrial Constructors, Inc.*, 874

F. Supp. 143, 145 (E.D. Tex.), *aff'd sub nom. O'Quinn v. World Industrial Constructors,

Inc.*, 68 F.3d 471 (5th Cir. 1995) (holding that a nonresident defendant's

independent contractor's contacts with the forum will not subject the nonresident

defendant to the forum's jurisdiction).  Tammariello's sole contact with Texas was

wiring $100,000 to Push Start's bank account.  *See* Tammariello Affidavit ¶¶ 3-7; *see

generally* Response.  However, simply wiring money to Texas is insufficient to support

the exercise of personal jurisdiction.  See *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147

(5th Cir. 1985) (holding that wiring money to Texas was insufficient to create

jurisdiction over the nonresident defendant); see also *Holt Oil & Gas Corporation*, 801

F.2d at 778 (holding that, among other contacts, sending three checks to Texas was

insufficient to create specific jurisdiction over the nonresident defendant).

Moreover, throughout Tammariello's dealings with Ashbey, Tammariello and

Ashbey never even mentioned the state of Texas in relation to Tammariello's

investment.  *See* Tammariello Affidavit ¶¶ 4-7.  Between Tammariello's single wire transfer to Texas and his ignorance of Ashbey's activities, Tammariello could not reasonably expect to be haled into court in Texas.  See *Burger King Corporation*, 471 U.S. at 474.  Accordingly, Rogers has not met his burden of establishing personal jurisdiction over Tammariello.

### III.  CONCLUSION

For the reasons set forth above, Tammariello's motion to dismiss for lack of personal jurisdiction is **GRANTED**.  The plaintiffs' claims against Tammariello are **DISMISSED** without prejudice.

**SO ORDERED**.

October 20, 2016.

A. JOE FISH
**Senior United States District Judge**